NO. 07-05-0421-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



DECEMBER 5, 2006


 ______________________________


 

JOSEPH L. VILLARREAL, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2004-405761; HONORABLE JIM BOB DARNELL, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Appellant, Joseph L. Villarreal, appeals his three convictions of injury to a child and
sentences of four years incarceration in the Institutional Division of the Texas Department
of Criminal Justice on each of the first two convictions and 10 years incarceration probated
for 10 years for the third conviction. We affirm.



Background 

 In 2002, T.D.'s mother was killed in an automobile accident which led to T.D. being
placed in appellant's care. Because of the mother's death and the child's subsequent
change in residence, Frances Alonzo, the school counselor, visited with T.D. weekly to help
T.D. cope with these traumatic events. In September of 2003, Lanau Limmer, one of
T.D.'s teachers, observed T.D. in an upset state and spoke with her in an attempt to learn
why she was upset. Limmer learned that appellant had hit T.D. with a coat belt which left
bruises on her. On October 10, 2003, the school nurse observed bruising that T.D.
indicated was caused by appellant hitting her with a belt. Finally, on October 17, 2003, a
second teacher noticed that T.D.'s hands were red and that she was complaining of pain. 
 T.D. was eight years old at the time of the first two incidents and was nine years old at the
time of the last incident. The teacher and T.D. spoke with Alonzo and the school nurse
regarding this third incident. Based on Alonzo's ongoing involvement with T.D., information
gathered during weekly sessions with T.D., and knowledge of the previous incidents,
Alonzo asked T.D. for permission to examine her body for other injuries to which she
consented. Upon examination of T.D., Alonzo discovered that she had bruising to her
lower back, buttocks, and thighs. 

 Based on these three incidents, appellant was indicted and charged with three
counts of injury to a child. The indictment charging the two earlier incidents also contained 
notice of the State's intent to seek a deadly weapon finding for the use of a belt. A jury
found appellant guilty on all three counts and recommended incarceration of four years for
the first two counts, and 10 years probated for 10 years in the third case. Appellant
appeals the affirmative findings of the use of a deadly weapon in the first two convictions
alleging legally and factually insufficient evidence to support the deadly weapon findings. 
Additionally, appellant appeals his convictions and sentences alleging legally and factually
insufficient evidence to support the convictions. We affirm.

 In reviewing a claim of legal insufficiency with regard to a deadly weapon finding,
we view the evidence in the light most favorable to the finding to determine whether any
rational trier of fact could have found beyond a reasonable doubt that the defendant used
or exhibited a deadly weapon. See Searcy v. State, 115 S.W.3d 628, 630
(Tex.App.-Waco 2003, no pet.); Nickerson v. State, 69 S.W.3d 661, 670 (Tex.App.-Waco
2002, pet. ref'd). Evidence can be legally sufficient to sustain a deadly weapon finding if
the evidence demonstrates that: (1) the object meets the statutory definition of a deadly
weapon; (2) the deadly weapon was used or exhibited during the transaction from which
the felony conviction was obtained; and (3) other people were put in actual danger. 
Drichas v. State, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005).

 By statute, a deadly weapon means: (A) a firearm or anything manifestly designed,
made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything
that in the manner of its use or intended use is capable of causing death or serious bodily
injury. Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon Supp. 2006). (1) To establish the use of
a deadly weapon, the State is not required to prove the weapon used actually caused
death or serious bodily injury but that it was capable of causing death or serious bodily
injury. See Brooks v. State, 900 S.W.2d 468, 472 (Tex.App.-Texarkana 1995, no pet.).

 We will now review the evidence in light of the three factors in Drichas. The school
nurse testified that a belt, used in a manner such as in the present case, has the potential
to cause injuries to internal organs if a person is hit in the lower back area, specifically
kidney damage. Thus evidence was presented that the belt met the statutory definition of
a deadly weapon. As to the second factor, appellant contends that no evidence was
presented to the jury to demonstrate that the belt was used as a deadly weapon during the
transaction from which the conviction was obtained because each witness stated that the
belt could cause death or serious bodily injury if the belt was used with enough force. Even
with such a qualification, the witnesses testified that the belt was capable of causing
serious bodily injury. Further, the jury observed the photos and heard the witnesses'
testimony describing the extent, severity, and location of the bruises. Therefore, the jury
has sufficient information to determine that the belt was used "during the transaction" as
a deadly weapon. See Brooks, 900 S.W.2d at 472 (jury's duty is to reconcile evidentiary
conflicts and its decision will be upheld if supported by credible evidence). Finally, the
nurse testified that, in her opinion, appellant used the belt with sufficient force to cause
severe bruising and had the potential to cause injuries to internal organs. The nurse
concluded that a belt used in this manner could kill a person if the person were hit hard
enough. Therefore, we conclude that the jury had sufficient evidence to make the
determination that T.D. was put in actual danger. Viewing all the evidence in light most
favorable to the verdict, we conclude that a rational jury could have found beyond a
reasonable doubt that the belt was capable of causing death or serious bodily injury and
thus could be considered a deadly weapon. We further conclude that the jury had
evidence that it could have found beyond a reasonable doubt that the defendant used or
exhibited the belt as a deadly weapon. Therefore, the evidence is legally sufficient to
support an affirmative deadly weapon finding. 

 When reviewing the factual sufficiency of the evidence supporting a deadly weapon
finding, we review all the evidence in a neutral light to determine whether the affirmative
finding of a deadly weapon is so weak as to be clearly wrong or manifestly unjust. See
Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex.Crim.App. 2003) (manifestly unjust standard
applies when complaining party did not have burden of proof at trial).

 In addition to the school nurse's testimony noted above, three teachers and the
school counselor testified to personally observing the extent of the bruising as well as the
location of the bruising. Additionally, several photographs of the bruising were admitted
and available for the jury to review in making their determination. Considering all of the
evidence in a neutral light, we cannot conclude that the evidence was so weak that the
jury's affirmative finding as to the deadly weapon issue was clearly wrong or manifestly
unjust. Therefore, we conclude that the evidence was factually sufficient to support the
jury's affirmative deadly weapon finding. We overrule appellant's issue and will next
consider the sufficiency of the evidence supporting the convictions.

 In reviewing the legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex.Crim.App. 2004). The jury is the sole judge of the weight and
credibility of the evidence. Jackson, 443 U.S. at 319. 

 When an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the evidence in a
neutral light, the jury was rationally justified in finding defendant guilty beyond a reasonable
doubt. See Watson v. State, 2006 WL 2956272, at *8 (Tex.Crim.App. Oct. 18, 2006). In
performing a factual sufficiency review, we are to give deference to the fact finder's
determinations and not seek to order a new trial simply because we may disagree with the
verdict. See id. As an appellate court, we are not justified in ordering a new trial unless
there is some objective basis in the record demonstrating that the great weight and
preponderance of the evidence contradicts the jury's verdict. See id. at *10. An opinion
addressing factual sufficiency must include a discussion of the most important and relevant
evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d
600, 603 (Tex.Crim.App. 2003).

 As to the sufficiency of the evidence supporting the conviction, appellant's sole 
contention is that the State failed to negate appellant's justification defense that his use of
force was disciplinary. § 9.61(a). Specifically, appellant contends that the State failed to
show that (1) the force used by appellant, acting in loco parentis, to discipline T.D. was not
reasonable and necessary; or (2) appellant could not have reasonably believed the force
was reasonable and necessary to discipline T.D. However, the justification provision raised
by appellant does not allow the use of deadly force. See § 9.61 (a). "Deadly force" means
force that is intended or known by the actor to cause, or in the manner of its use or
intended use is capable of causing, death or serious bodily injury. § 9.01. Hence, if the
State's evidence proves that the force, in the manner of its use or intended use, was
capable of causing death or serious bodily injury, then the justification defense raised by
appellant is inapplicable. 

 We note that the definitions for deadly force and deadly weapon contain similar
language. Compare § 1.07(a)(17)(B) and § 9.01. As previously discussed in our analysis
of the jury's affirmative deadly weapon finding, the evidence was legally and factually
sufficient to support a finding that the belt, as used or as it was intended to be used, was
capable of causing death or serious bodily injury. Therefore, the jury's affirmative deadly
weapon finding can arise only if the jury also concluded that the belt, in the manner of its
use or intended use, is capable of causing death or serious bodily injury. Having
concluded that the evidence is sufficient to support the jury's affirmative deadly weapon
finding, appellant cannot claim justification under section 9.61 for his actions because
deadly force was used.

 However, even if the defense of justification was available to appellant, the State
was not required to specifically negate appellant's defense. The State is required to
present evidence sufficient to convince a jury that appellant committed each element of the
offense presented. See Saxton v. State, 804 S.W.2d 910, 913 (Tex.Crim.App. 1991)
(State does not have burden of production but rather a burden of persuasion in disproving
a defense). A verdict of guilty is an implicit rejection of appellant's defensive argument. 
See Zuliani, 97 S.W.3d at 594. Therefore, assuming arguendo that appellant legitimately
raised the justification defense that the belt's use was for disciplinary purposes, the jury's
verdict demonstrates that the jury rejected appellant's claim of justification. Viewing the
evidence discussed above in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. 

 Furthermore, we may not order a new trial unless there is some objective basis in
the record demonstrating that the great weight and preponderance of the evidence
contradicts the jury's verdict. Considering the extent of bruising described by the
witnesses, appellant's admission of the use of the belt on T.D. and the photographs
admitted into evidence, we cannot conclude that the great weight and preponderance of
the evidence contradicts the jury's verdict. See Watson, 2006 WL 2956272, at *10. We
conclude that the evidence is both legally and factually sufficient to support the jury's
verdict. We overrule appellant's issues of legal and factual insufficiency of the evidence
to support the convictions.

 Having overruled appellant's issues, we affirm.

 

 Mackey K. Hancock

 Justice




Do not publish. 
1. Further references to a section of the Penal Code will be by reference to "§ _."



lse" Name="Colorful List Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00016-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



FEBRUARY
28, 2011

 



 

JOHN ARTHUR NEWMAN, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 30TH DISTRICT COURT OF WICHITA
COUNTY;

 

NO. 44,948-A; HONORABLE ROBERT P. BROTHERTON, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, John Arthur Newman,
pleaded guilty to one count of indecency with a child.[1]  Consistent with the plea agreement, appellant
was granted deferred adjudication community supervision for a period of ten
years.  Subsequently, the State filed a
motion to adjudicate appellants deferred adjudication.  The original motion to adjudicate was
ultimately dismissed.  Thereafter, the
State filed a second motion to adjudicate appellants deferred
adjudication.  After a contested hearing
on the States motion to adjudicate, appellant was adjudicated guilty of the
original offense of indecency with a child. 
After a hearing on the issue of punishment, the trial court assessed
appellants punishment at 12 years confinement in the Institutional Division of
the Texas Department of Criminal Justice (ID-TDCJ).  Through two issues, appellant contends that
the trial court abused its discretion in adjudicating appellants deferred
adjudication and that the trial court committed error in admitting evidence of
a failed polygraph examination.  We will
affirm.

Factual and Procedural Background

            As
stated above, appellant initially pleaded guilty to one count of indecency with
a child.  Pursuant to the plea agreement,
appellant was placed on deferred adjudication community supervision for a
period of 10 years.  The terms and
conditions of appellants community supervision were lengthy. The terms
involved in the hearing on the States second motion to adjudicate involved
condition 12 (payment of a monthly supervision fee of $50 and payment of a
Crime Stoppers fee in the total amount of $50 at the rate of $5 per month) and
condition 16(f) (required appellant to remain in the sexual abuse treatment
program until successfully completed, as determined by the treatment
specialists, or his probation had expired). 
The State alleged that appellant had failed to pay $433 of his probation
fees and $45 of his Crime Stoppers fees. 
Further, the State alleged that appellant was unsuccessfully discharged
from the program because of three factors: 1) appellant denied committing the
offense to which he pleaded guilty; 2) appellant refused to cooperate with
group treatment; and 3) appellant failed a polygraph test.  

            On
October 16, 2009, the trial court conducted a hearing on the States motion to
adjudicate.  After hearing the evidence
regarding the allegations of the State and testimony from appellant, the trial
court recessed the hearing until October 23, 2009.  On that day, the trial court found that
appellant was financially unable to make the payments required by condition 12;
however, it found the allegations that appellant had violated condition 16(f)
to be true.  Accordingly, the trial court
adjudicated appellant guilty of the offense of indecency with a child.

            On
October 30, 2009, the trial court heard both sides on the issue of the proper
punishment to be assessed.  After hearing
the evidence, the trial court assessed appellants punishment at confinement in
the ID-TDCJ for a period of 12 years.  

            Appellant
perfected his appeal and filed his brief with this Court.  Appellants issues attack the sufficiency of
the evidence to support the trial courts decision to adjudicate appellant
guilty and the trial courts admission of evidence concerning appellants
failure of a polygraph examination given as part of the sexual abuse treatment
program.  We disagree with appellant and will
affirm the judgment of the trial court.

Sufficiency of the Evidence

Standard of Review

            On
violation of a condition of community supervision imposed under an order of
deferred adjudication, the defendant is entitled to a hearing limited to the
determination by the court of whether it proceeds with an adjudication of guilt
on the original charge.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 5(b) (West Supp. 2010).  This
determination is reviewable in the same manner used to determine whether
sufficient evidence supported the trial courts decision to revoke community
supervision.  Id.;
Antwine v. State, 268 S.W.3d 634, 636 (Tex.App.Eastland 2008, pet. refd).  In an adjudication hearing, the State must
prove by a preponderance of the evidence that a defendant violated the terms of
his community supervision.  Rickels
v. State, 202 S.W.3d 759, 76364 (Tex.Crim.App.
2006); Antwine, 268 S.W.3d at 636.  A preponderance of the evidence means that
greater weight of the credible evidence which would create a reasonable belief
that the defendant has violated a condition of his probation.  Rickels, 202 S.W.3d at 76364.

            Given
the unique nature of a revocation hearing and the trial courts broad
discretion in the proceedings, the general standards for reviewing sufficiency
of the evidence do not apply.  Pierce v. State, 113 S.W.3d 431, 436 (Tex.App.Texarkana
2003, pet. refd). Instead, we review the
trial courts decision regarding community supervision revocation for an abuse
of discretion and examine the evidence in a light most favorable to the trial
courts order.  Garrett
v. State, 619 S.W.2d 172, 174 (Tex.Crim.App.
1981).  When the standard of
review is abuse of discretion, the record must simply contain some evidence to
support the trial courts decision.  Herald v. State, 67 S.W.3d 292, 293 (Tex.App.Amarillo
2001, no pet.).  The trial judge
is the trier of fact and the arbiter of the
credibility of the testimony during a hearing on a motion to adjudicate.  See Garrett, 619
S.W.2d at 174.

 

Analysis

            At
the hearing on the motion to adjudicate, Ron Burks, a licensed sex offender
treatment provider, with whom appellant had been placed, testified about
appellants progress and efforts at completing the program.  The sum of Burkss testimony was that
appellant had regressed regarding the issue of accepting responsibility for the
offense to which he had pleaded guilty. 
This was shown, according to Burks, because appellant initially stated
that he had inappropriately touched the victim 25-50 times but later changed
that statement to touching the victim only once.  Additionally, Burks testified about how appellant
did not complete the homework assignments required to progress through the
program.  According to the testimony,
there were some 42 homework assignments contained in the workbook that each
participant received.  Further, Burks
testified that, in his experience, the assignments should be completed within
12 to 24 months.  Appellant had completed
three assignments in eleven months. 
Burks acknowledged that appellant had several medical conditions and
testified about the efforts that the program took to accommodate those
issues.  However, in the final analysis,
it was Burkss opinion that appellant was malingering and using his medical
conditions as an excuse.  Burks also
testified that appellant appeared to choose not to participate in the group
sessions as he never seemed to have anything to say or offer.  This was, according to Burks,
counterproductive to the treatment plan because this type of therapy is
confrontational in nature and requires the participants to be active in their
participation.  Appellant also missed
some sessions according to Burkss records. 
Appellant failed a polygraph examination that he was required to take as
part of the treatment plan.  Burks
testified that he believed that appellant had the capacity to do the work
required.  This was demonstrated,
according to Burks, when appellant did complete one of the homework assignments
requiring a presentation during a group session.  Burks testified that appellants presentation
was much better than had been expected. 
However, it was Burkss opinion that appellant was not trying and,
therefore, not getting benefit from the plan. 
As a result of appellants lack of effort, he was discharged from the
plan as an unsuccessful participant.

            In
the face of this evidence regarding appellants adjudication for failure to
comply with condition 16(f), appellant presents the issue as the failure of the
State to prove that appellant intentionally, knowingly, or voluntarily failed
to remain in the sex offender program. 
Thus, according to appellant, the trial court abused its discretion when
it adjudicated appellant.  

            Initially,
we point out that appellants assertion that the State was required to prove
that his removal from the sexual abuse treatment program had to be because of
an intentional, knowing or voluntary act is not supported by any citations to
any authority so holding.  That issue
aside, appellant pins his contentions on the testimony of Burks cited in his
brief.  According to appellant, two of
the three allegations were proven to be false by these excerpts from Burkss
testimony.  As we read the testimony,
such might be the case if we limit our review to only the portions cited in
appellants brief.  However, when the
total of Burkss testimony is read, it is clear that appellant had substantial
difficulty in completing the treatment program and that much of his difficulty
appeared to be due to his lack of effort. 
The record certainly supports that proposition.  

            Understanding
that the trial court is the final arbiter of the facts and the weight and
credibility of the evidence, Garrett, 619 S.W.2d at 174, and that the
State need only prove its allegations by a preponderance of the evidence, Rickels, 202 S.W.3d at 76364, we are convinced that
the trial court did not abuse its discretion when it adjudicated appellant
guilty of indecency with a child.  See
Herald, 67 S.W.3d at 293.  Accordingly, appellants first issue is
overruled.

Admission of Polygraph Evidence

            Proof
of a violation of a single term and condition of community supervision is a
sufficient basis upon which to adjudicate a deferred adjudication.  Antwine, 268 S.W.3d at 636. 
Therefore, we need not address appellants second contention.  See Tex.
R. App. P. 47.1.

Conclusion

            Having
overruled appellants first issue, we affirm the judgment of the trial court.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Do not publish

 











[1]
See
Tex. Penal Code Ann. § 21.11(a)(1) (West Supp. 2010).